**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| WSOU INVESTMENTS, LLC d/b/a | § | |
| BRAZOS LICENSING AND | § | |
| DEVELOPMENT, | § | |
| | § | CIVIL ACTION No. 6:20-CV-00889-ADA |
| Plaintiff, | § | CIVIL ACTION No. 6:20-CV-00891-ADA |
| | § | CIVIL ACTION No. 6:20-CV-00892-ADA |
| v. | § | |
| | § | |
| HUAWEI TECHNOLOGIES CO. LTD., | § | |
| *et al.*, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## DEFENDANTS' RESPONSIVE CLAIM CONSTRUCTION BRIEF

# TABLE OF CONTENTS

**Page**

I.   Legal Standards ................................................................................................ 1

    A.   General Claim Construction Principles ...................................................... 1

    B.   Means-Plus-Function Claim Construction Principles.................................. 1

    C.   Indefiniteness ............................................................................................. 3

II.  U.S. Patent No. 6,704,304 ("the '304 Patent") (Case No. 6:20-cv-00889) ...................... 3

    A.   "means for determining whether a call should be routed over said PSTN or said core packet network" (claim 3) ................................................................. 4

III. U.S. Patent No. 7,406,260 ("the '260 Patent") (Case No. 6:20-cv-00891) ...................... 6

    A.   "masking alarms in the OCh paths in transmit direction" (claim 1)...................... 6

    B.   "masking alarms in the OCh paths in receive direction" (claim 1) ..................... 10

    C.   "wherein the step of analyzing alarms comprises the steps of" (claim 1) ........... 10

    D.   "masking alarms in the downstream OCh path in the transmit direction that are correlated with each alarm in the list" (claim 1)..................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*,
521 F.3d 1328 (Fed. Cir. 2008)..................................................................2

*B. Braun Med., Inc. v. Abbott Labs.*,
124 F.3d 1419 (Fed. Cir. 1997)..............................................................3, 5

*Curtiss-Wright Flow Control Corp. v. Velan, Inc.*,
438 F.3d 1374 (Fed. Cir. 2006)................................................................12

*Default Proof Credit Card Sys. v. Home Depot U.S.A., Inc.*,
412 F.3d 1291 (Fed. Cir. 2005)..................................................................2

*Ergo Licensing, LLC v. CareFusion 303, Inc.*,
673 F.3d 1361 (Fed. Cir. 2012)..............................................................2, 3

*Function Media, L.L.C. v. Google, Inc.*,
708 F.3d 1310 (Fed. Cir. 2013)..............................................................2, 4

*Innovative Display Techs. LLC v. Hyundai Motor Co.*,
No. 2:14-CV-201, 2015 WL 2090651 (E.D. Tex. May 4, 2015) ...........10

*Light Transformation Techs. LLC v. Lighting Science Group Corp.*,
No. 2:12-CV-826, 2014 WL 3402125 (E.D. Tex. July 11, 2014) ...........10

*Masco Corp. v. United States*,
303 F.3d 1316 (Fed. Cir. 2002)..................................................................1

*Medtronic, Inc. v. Advanced Cardiovascular Sys., Inc.*,
248 F.3d 1303 (Fed. Cir. 2001)..............................................................2, 4

*Nautilus Inc. v. Biosig Instruments, Inc.*,
572 U.S. 898 (2014)....................................................................................3

*Net MoneyIn v. VeriSign, Inc.*,
545 F.3d 1359 (Fed. Cir. 2008)..................................................................5

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005)............................................................1, 11

*Sonix Tech. Co., Ltd. v. Publ'ns Int'l, Ltd.*,
844 F.3d 1370 (Fed. Cir. 2017)..................................................................3

*Williamson v. Citrix Online, LLC*,
   792 F.3d 1339 (Fed. Cir. 2015)........................................................................2, 3

*WMS Gaming, Inc. v. Int'l Game Tech.*,
   184 F.3d 1339 (Fed. Cir. 1999)...........................................................................2

**Statutes**

35 U.S.C. § 112, ¶ 2..............................................................................................3

35 U.S.C. § 112, ¶ 4............................................................................................12

35 U.S.C. § 112, ¶ 6......................................................................................1, 3, 4

## TABLE OF EXHIBITS

| Exhibit | Description |
| --- | --- |
| Ex. 1 | Declaration of Tal Lavian Ph.D. Regarding Claim Construction ("Lavian Decl.") |

Pursuant to the deadline set forth in the Scheduling Order (*see, e.g.,* -00889, Dkt. 29), and the guidelines regarding claim construction set forth in the Order Governing Proceedings in Patent Cases ("OGP") (Version 3.3), Defendants Huawei Technologies Co., Ltd., *et al*., (collectively, "Huawei") respectfully submit this Responsive Claim Construction Brief to Plaintiff's ("WSOU's") Opening Claim Construction Brief ("Opening Brief") (*see, e.g.*, -00889, Dkt. 40).[1]

## I. Legal Standards

### A. General Claim Construction Principles

The words of a patent claim "are generally given their ordinary and customary meaning." *Phillips v. AWH Corp.,* 415 F.3d 1303, 1312 (Fed. Cir. 2005) (citations omitted). This is the meaning they would have to a person of ordinary skill in the art in view of the intrinsic evidence, *i.e.*, the claims, the specification, and the prosecution history. *See id.* at 1313. "The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Id.* at 1316 (quoting *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998)).

### B. Means-Plus-Function Claim Construction Principles

Section 112, Paragraph 6 (pre-AIA)[2] provides that a structure may be claimed as a "means . . . for performing a specified function," and that an act may be claimed as a "step for performing a specified function." *Masco Corp. v. United States,* 303 F.3d 1316, 1326 (Fed. Cir. 2002). The scope of such "means-plus-function" claims is limited "to only the structure, materials, or acts

---

[1] This Brief addresses the disputed claim terms for Case Nos. 6:20-cv-00889, -00891, and -00892. Given the restrictions in OGP (Version 3.3) governing the number of disputed claim terms that the parties may collectively present to the Court, the parties are not presenting any disputed claim terms for Case No. 6:20-cv-00892 (U.S. Pat. No. 7,460,658).

[2] As both patents addressed in this brief were filed prior to the enactment of the America Invents Act ("AIA"), the pre-AIA statutes apply in this case.

described in the specification as corresponding to the claimed function and equivalents thereof." *Williamson v. Citrix Online, LLC,* 792 F.3d 1339, 1347 (Fed. Cir. 2015). Construing a means-plus-function limitation is a two-step process. First, courts determine the function of the means-plus-function limitation. *Medtronic, Inc. v. Advanced Cardiovascular Sys., Inc.,* 248 F.3d 1303, 1311 (Fed. Cir. 2001). Second, courts determine "the corresponding structure described in the specification and equivalents thereof." *Id.* The structure in the specification is "corresponding" only if "the specification or prosecution history clearly links or associates that structure to the function recited in the claim." *Id.* The corresponding structure "must include all structure that actually performs the recited function." *Default Proof Credit Card Sys. v. Home Depot U.S.A., Inc.,* 412 F.3d 1291, 1298 (Fed. Cir. 2005).

"In cases involving a computer-implemented invention in which the inventor has invoked means-plus-function claiming, [the Federal Circuit] has consistently required that the structure disclosed in the specification be more than simply a general purpose computer or microprocessor." *Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.,* 521 F.3d 1328, 1333 (Fed. Cir. 2008). A general purpose computer, in effect, becomes a special purpose computer once it is programmed to perform a particular function. *See id.*; *see also WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1348 (Fed. Cir. 1999). Where the corresponding structure is a special-purpose computer, the specification must provide an algorithm for accomplishing the claimed function. *See Function Media, L.L.C. v. Google, Inc.*, 708 F.3d 1310, 1318 (Fed. Cir. 2013) ("When dealing with a 'special purpose computer-implemented means-plus-function limitation,' we require the specification to disclose the algorithm for performing the function.").

An algorithm is "a step-by-step procedure for accomplishing a given result." *Ergo Licensing, LLC v. CareFusion 303, Inc.*, 673 F.3d 1361, 1365 (Fed. Cir. 2012). To qualify as a

"corresponding structure" under §112, ¶ 6, the algorithm must be clearly linked in the specification to the function recited in the claim. *See B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1424 (Fed. Cir. 1997). The algorithm may be described in "any understandable terms," such as "a mathematical formula, in prose, or as a flow chart, or in any other manner that provides sufficient structure." *Ergo Licensing,* 673 F.3d at 1365.

### C.    Indefiniteness

Patent claims must particularly point out and distinctly claim the subject matter regarded as the invention. 35 U.S.C. § 112, ¶ 2. A claim, when viewed in light of the intrinsic evidence, must "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus Inc. v. Biosig Instruments, Inc*., 572 U.S. 898, 910 (2014). If it does not, the claim is invalid as indefinite. *See id.* at 901. Whether a claim is indefinite is determined from the perspective of one of ordinary skill in the art as of the time the application for the patent was filed. *See id*. at 911. "Indefiniteness must be proven by clear and convincing evidence." *Sonix Tech. Co., Ltd. v. Publ'ns Int'l, Ltd*., 844 F.3d 1370, 1377 (Fed. Cir. 2017).

In the context of a claim subject to 35 U.S.C. § 112, ¶ 6, a claim is invalid as indefinite if it fails to disclose adequate corresponding structure to perform the claimed function. *Williamson*, 792 F.3d at 1351-52. The disclosure is inadequate when one of ordinary skill in the art "would be unable to recognize the structure in the specification and associate it with the corresponding function in the claim." *Id.* at 1352.

## II.    U.S. Patent No. 6,704,304 ("the '304 Patent") (Case No. 6:20-cv-00889)

The '304 Patent relates to a system for determining whether a telephone call should be routed over a packet network (such as the Internet) or instead over a traditional public switched telephone network ("PSTN"). *See, e.g.*, '304 Patent, Abstract, 1:8-10, 1:51-64. This routing decision is controlled by a "server system" based on a determination of whether the packet network

is expected to provide adequate quality of service. *Id.*, 1:26-36, 1:39-45, 1:51-64, 3:27-35, 4:19-25, 4:41-46. Because it is generally more economical, the server system initially attempts to route calls over the packet network; however, if conditions are inadequate (*i.e.*, if packet delays exceed an acceptable threshold), the server system will route the call over the PSTN. *Id.*

### A. "means for determining whether a call should be routed over said PSTN or said core packet network" (claim 3)

| Huawei's Proposed Construction | WSOU's Proposed Construction |
|---|---|
| Subject to 35 U.S.C. § 112, ¶ 6.<br><br>**Function:** "determining whether a call should be routed over said PSTN or said core packet network"<br><br>**Structure:** server system (13), as depicted in Figure 1, programmed to perform the algorithm disclosed at 1:55-62, 4:1-10, 4:19-25, and Figure 2 (blocks 203 and 205), and equivalents thereof. | Subject to 35 U.S.C. § 112, ¶ 6.<br><br>**Function:** "determining whether a call should be routed over said PSTN or said core packet network"<br><br>**Structure:** the portion(s) of server system (13) programmed to perform respective operation(s) of the algorithm(s) disclosed at 1:55-62, 4:1-10, 4:19-25, and Figure 2 (blocks 203 and 205), and equivalents thereof. |

The parties agree that this is a means-plus-function claim term governed by 35 U.S.C. § 112, ¶ 6. The parties further agree on the claimed function and on the corresponding algorithmic structure disclosed in the specification. The only disputes between the parties are (1) the specific system (or portion thereof) programmed to perform the algorithm and (2) the specificity with which the corresponding structure is defined.

As to the first dispute, Huawei's proposed structure—"server system (13)"—is correct because it is the structure that is clearly linked to the claimed function in the specification. By contrast, WSOU's construction lacks clarity and precision insofar as it leaves to the trier of fact to determine which "portion(s)" of the "server system (13)" are required. Because an undefined "portion" of a server system cannot be clearly linked to the claimed function, WSOU's proposed construction should be rejected. *See Medtronic,* 248 F.3d at 1311 (The structure in the

specification is "corresponding" only if "the specification or prosecution history clearly links or associates that structure to the function recited in the claim.").

In its Opening Brief, WSOU argues that Huawei's proposal of "server system (13)" is not the proper structure because it would be "'redundant and illogical' to construe the server system (13) itself as the structure corresponding to the recited means." *See* Opening Brief, at 1 (citing *Net MoneyIn v. VeriSign, Inc.*, 545 F.3d 1359, 1364 (Fed. Cir. 2008). But WSOU misapplies the holding in *Net MoneyIn* and improperly focuses on only a subset of Huawei's proposed construction. *See id*. at 1-2. Huawei does not propose "server system (13)" ***alone*** as the corresponding structure. Rather, Huawei proposes "server system (13) ... ***programmed to perform the algorithm*** disclosed at 1:55-62, 4:1-10, 4:19-25, and Figure 2 (blocks 203 and 205)." The "server system" recited in independent claim 1 is not so limited, and thus there is no redundancy.

As to the second dispute, Huawei's identification of the required algorithmic structure is correct because it is the algorithm clearly linked in the specification to the claimed function. *See B. Braun Med.*, 124 F.3d at 1424. Here too, WSOU's proposed construction lacks clarity and precision by virtue of its reliance upon vague language—namely, "respective ***operation(s)*** of the ***algorithm(s)***." Under WSOU's proposed construction, it is not clear whether an accused product must be programmed to perform all, or merely a subset, of the recited algorithmic structure in order to infringe. It is likewise unclear whether prior are must disclose all, or merely a subset, of the recited algorithmic structure in order to disclose this claim limitation. As such, WSOU's proposed construction should be rejected.

Because Huawei's proposed construction properly identifies, without ambiguity, the structure that is clearly linked in the specification to the claimed function, Huawei's construction is correct, and should be adopted by the Court.

**III.    U.S. Patent No. 7,406,260 ("the '260 Patent") (Case No. 6:20-cv-00891)**

The '260 Patent relates to systems and methods for identifying and isolating "root cause" alarms in an optical network.  *See, e.g.*, '260 Patent, Abstract, 2:23-26; *see also* Ex. 1 ("Lavian Decl."), at ¶¶ 26-27, 43-45.  This is accomplished by creating a list of alarms in the network, analyzing and correlating the alarms, and then suppressing or "masking" correlated alarms so as to display to a network administrator only those alarms that are considered a "root cause" alarm. *See* '260 Patent, 2:27-47; *see also* Ex. 1, ¶¶ 45-47.

**A.    "masking alarms in the OCh paths in transmit direction" (claim 1)**

| Huawei's Proposed Construction | WSOU's Proposed Construction |
|---|---|
| Indefinite | Plain and ordinary meaning |

This claim term is indefinite because there is nothing in claim 1 or in the specification or prosecution history of the '260 Patent that discloses a point of reference for determining the "transmit direction" as compared to the "receive direction" (or any other direction), nor is there any disclosure that would allow a person of ordinary skill in the art to understand *which* "transmit direction" is claimed, even if a reference point were disclosed.  *See* Ex. 1, ¶¶ 61, 63-68.  In its Opening Brief, WSOU offers a multitude of citations to the specification that disclose why and how to "mask" alarms, but WSOU fails to identify any disclosure of how to determine the "transmit direction."  *See* Opening Brief, at 3-4.  This failure is because no such disclosure is present in the '260 Patent.

Central to the alleged invention of the '260 Patent is the concept of analyzing an optical channel path in order to mask certain alarms and, as a result, reduce the number of alarms displayed to a user (ideally to only those that are "root cause" alarms).  *See* Ex. 1, ¶¶ 44-47.  The order in which the optical channel paths are analyzed (in the "transmit direction" first, and in the "receive

direction" second) is important because the direction of the analysis dictates which "downstream alarms" are determined to be "correlated," and thus which alarms are masked and which are displayed to the system administrator. *See id.*, ¶¶ 47-50.

As explained in the Declaration of Dr. Tal Lavian, optical networks are made up of a collection of nodes and can be connected in various ways (*e.g.*, point-to-point, mesh, ring, etc.). *See* Ex. 1, ¶ 62. The simplest of these topologies is point-to-point. *Id.*, ¶ 64. In a point-to-point topology, the network nodes are each connected to at least two other nodes. *Id.* From the perspective of each individual node, however, there is no "transmit direction." *Id.* Instead, the node can send (or "transmit") optical communications to a respective upstream or downstream node. *Id.*

For example, in the diagram below, representing a single optical channel path using a point-to-point topology, Node B can transmit optical communications to Node A or to Node C. *Id.* Those optical communications, from the perspective of Nodes A and C, would be ***received*** (and not transmitted). *Id.*



The absence of a well-understood meaning in the art for "transmit direction" is even more evident in the context of more complex optical networks, such as that of claim 1 from the '260 Patent. *See id.*, ¶ 65. Claim 1 of the '260 Patent recites "an optical network having Optical Channel (OCh) paths" (that is, multiple optical channel paths), each including a sequence of ports (also referred to in the field of optical networks as "nodes"). *Id.* An exemplary optical network with multiple optical channel paths using a point-to-point topology is depicted below. *Id.*



In this diagram, Node B can transmit optical communications to any of Nodes A, C, or F. *Id.* Those communications, from the perspective of Nodes A, C, and F, would be ***received*** (and not transmitted). *Id.* (emphasis added). Notably, because optical network topologies include a variety of "branches," the "transmit direction," ***even from a defined node***, cannot be determined with reasonably certain. *Id.*

Specifically, as shown above, Node B can communicate with three other nodes (Nodes A, C, and F). *Id.* Yet there is nothing in claim 1 or in the specification or prosecution history of the '260 Patent that discloses to a person of ordinary skill in the art which of these three possible paths is the "transmit direction" (or if two or more of these paths are the "transmit direction"). *Id.* This ambiguity is made even worse when considered in the context of traversing the optical network to identify, correlate, and mask alarms, as required by claim. *Id.* For example, even assuming that the "transmit direction" for Node B in the diagram above is in the direction of Node C (although there is nothing in the intrinsic record indicating as much), it is unclear whether the "transmit direction" continues from Node C to Node D, or instead to Node G for purposes of masking alarms. *Id.*

In more complex topologies, even with a reference point, there is no way to determine the "transmit direction." *Id.*, ¶ 66. For example, in a mesh topology, a rudimentary example of which is shown below, a single node can communicate with multiple (or even all) other nodes in the network. *Id.* While the diagram below shows an optical mesh network with only a few nodes, in real world applications, the number of nodes in a mesh optical network would commonly be significantly higher (*e.g.*, hundreds or thousands). *Id.* As depicted below, Node A can communicate with any of Nodes B, C, D, E, F, or G. *Id.* While not shown, the same would be true for each of the other nodes (that is, each node can communicate with each of the other nodes in the network). *Id.* As a result, there is no communication path that can be said to be the "transmit direction" in this type of topology.



Without a point of reference, a person of ordinary skill in the art is unable to determine the "transmit direction." *See* Ex. 1, ¶¶ 61-65. But even if a point of reference were provided, and even if the "transmit direction" could be differentiated from some other direction (*e.g.*, the "receive direction"), there is nothing in claim 1 or the specification or prosecution history of the '260 Patent

that teaches a person of ordinary skill in the art to determine *which* "transmit direction" is claimed. *Id.*, ¶¶ 66-68. As such, this term is indefinite. *See Light Transformation Techs. LLC v. Lighting Science Group Corp.*, No. 2:12-CV-826, 2014 WL 3402125, at *9 (E.D. Tex. July 11, 2014) (finding the term "the axis of light direction" indefinite because the patent fails to identify the specific axis or direction that constitutes "the axis of light direction"); *Innovative Display Techs. LLC v. Hyundai Motor Co.*, No. 2:14-CV-201, 2015 WL 2090651, at * 23 (E.D. Tex. May 4, 2015) (finding the term "more in the width direction" indefinite where the claim contained no point of reference for such determination). As such, the Court should find claim 1 invalid.

**B.     "masking alarms in the OCh paths in receive direction" (claim 1)**

| Huawei's Proposed Construction | WSOU's Proposed Construction |
|---|---|
| Indefinite | Plain and ordinary meaning |

For the same reasons discussed above with regard to the "transmit direction" term, this claim term is indefinite because there is nothing in claim 1 or in the specification or prosecution history of the '260 Patent that specifies a point of reference for determining the "receive direction" as compared to the "transmit direction" (or any other direction). *See* Ex. 1, ¶¶ 60, 71-74.

**C.     "wherein the step of analyzing alarms comprises the steps of" (claim 1)**

| Huawei's Proposed Construction | WSOU's Proposed Construction |
|---|---|
| Indefinite | Plain and ordinary meaning |

There can be no legitimate debate that the term "the step of analyzing alarms" lacks antecedent basis in independent claim 1. Despite this fact, WSOU argues that claim 1 should not be found indefinite because "'wherein the step of analyzing alarms' refers to the previously recited 'masking alarms' in claim 1." Opening Brief, at 5. This argument, however, is contrary to

established claim construction principles, is incompatible with the surrounding language of claim 1 (as well as multiple dependent claims), and injects uncertainty into the claim language.

*First*, WSOU's argument that disclosures in the specification should limit claim 1 such that the disputed claim term modifies the "previously recited 'masking alarm' in claim 1" (*id*.) violates the fundamental claim construction principle that limitations from the specification cannot be read into a claim. *See Phillips*, 415 F. 3d at 1319-20 ("[O]ne of the cardinal sins of patent law [is] reading a limitation from the written description into the claims."). For that reason alone, WSOU's argument should be rejected. However, even if WSOU's argument did not contravene a basic canon of claim construction, WSOU's argument still fails, as there are two previous recitations of "masking alarms" in claim 1, and "the step of analyzing alarms" cannot refer back to both.

Indeed, such a reading of the claim would create redundancy and self-contradiction. Specifically, the first "masking" step, "*masking alarms* in the OCh paths *in transmit direction*" would render the last "masking" step, "*masking alarms* in the downstream OCh path *in the transmit direction* that are correlated with each alarm in the list," redundant. Similarly, the second "masking" step, "masking alarms in the OCh paths in *receive direction*," is inconsistent with and contradictory to the first "masking" step of "masking alarms in the downstream OCh path in the *transmit direction*..."

*Second*, incorporating the method steps associated with "the step of analyzing alarms" into the prior recitations of "masking alarms," as advocated by WSOU, creates yet another ambiguity. Specifically, "the step of analyzing alarms" recites "determining" and "masking" in connection with the claimed "list." But there are two "lists" recited in claim 1—"a list of all affected OCh paths," and "a list of the alarms present at each port." As modified by WSOU, claim 1 would be

indefinite for a separate reason because it would not be reasonably certain to a person of skill in the art which of the two "lists" these "determining" and "masking" steps refer.

*Third*, WSOU's reliance upon dependent claim 3 to justify reading limitations from the specification into claim 1 is unavailing. Claim 3 recites, in relevant part, "wherein the step of masking alarms in the OCh path in the receive direction comprises the step of analyzing alarms at the ports on the OCh path in the receive direction." Based on this language, WSOU claims that "'wherein the step of analyzing alarms' refers to the previously recited 'masking alarms' in claim 1." Opening Brief, at 4. This argument, however, violates the doctrine of claim differentiation, and would render claim 3 redundant.

That is, if the step of "masking alarms in the OCh paths in receive direction" in claim 1 already includes the limitations of claim 3—as argued by WSOU—claim 3 fails to further limit the claimed invention, and is therefore invalid for violating 35 U.S.C. § 112, ¶ 4. *See Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1380 (Fed. Cir. 2006) (to be valid, "the [patent] statute stresses that a dependent claim must add a limitation to those recited in the independent claim.") (citing 35 U.S.C. § 112, ¶ 4). In addition, WSOU's argument is directly contradicted by dependent claim 4, which states, in relevant part, "wherein the step of analyzing alarms comprises ... masking alarms in the downstream OCh path in the receive direction ...." Analyzing alarms cannot refer back to masking alarms (*i.e.*, be a subset of masking alarms) if the step of analyzing alarms can *include* masking alarms. Thus, WSOU's claim that "the step of analyzing alarms" refers back to "masking alarms" fails.

Because "the step of analyzing alarms" unquestionably lacks antecedent basis, and because WSOU's attempted justification violates basic principles of claim construction and fails to cure the ambiguity (and in fact creates further uncertainty), a person of ordinary skill in the art would

not understand this claim term with reasonable certainty, and this claim term is therefore indefinite and invalid.

### D. "masking alarms in the downstream OCh path in the transmit direction that are correlated with each alarm in the list" (claim 1)

| Huawei's Proposed Construction | WSOU's Proposed Construction |
| --- | --- |
| Indefinite | Plain and ordinary meaning |

For the same reasons discussed above with respect to the "transmit direction" term, this claim term is indefinite because there is nothing in claim 1 or in the specification or prosecution history of the '260 Patent that specifies a point of reference for determining the "transmit direction" as compared to the "receive direction," or any other direction. *See* Ex. 1, ¶¶ 61-70, 76-78.

In addition to requiring the concept of a "transmit direction," this claim term also recites a "downstream OCh path." As is the case for "transmit direction" and "receive direction" above, the term "downstream OCh path" is not reasonably certain to a person of ordinary skill in the art absent a point of reference from which the "downstream" direction can be determined. *See id.*, ¶ 79. The '260 Patent provides no such point of reference, whether in the claims, the specification, or the prosecution history.

Moreover, in more complex networks, such as the mesh networks found in the real world (and contemplated by the claims of the '260 Patent), even with a reference point, a person of ordinary skill in the art would not understand with reasonable certainty *which* "downstream OCh path" is claimed. *See Id.*, ¶¶ 66-68, 77. As a result, a person of ordinary skill in the art would not understand the term "downstream OCh path" with reasonable certainty, and this claim term is therefore indefinite.

Additionally, this claim term is further indefinite because a person of ordinary skill in the art would not understand with reasonable certainty the meaning of the phrase "masking

alarms...that are correlated with ***each alarm*** in the list." Specifically, it is not clear whether claim 1 of the '260 Patent requires masking an alarm when it is correlated with ***any*** other alarm in the list, or instead only masking the alarm when it is correlated with ***every*** alarm in the list.

Claim 1 of the '260 Patent uses the word "each" three times. In the first two instances, the word clearly means "every." *See* '260 Patent, claim 1 ("preparing a list of the alarms present at ***each*** port" and "determining if ***each*** alarm in the list is an OCh alarm or a port level alarm or a card level alarm"). As to the third instance, claim 1 requires that each alarm in a "list" be classified into one of three "levels" ("OCh alarm," "port level alarm," or "card level alarm"). *See id*. After the classification, the step of "masking alarms...that are ***correlated with each alarm in the list***" is performed. *See id.* But a person of ordinary skill in the art would understand that alarms from differing "levels" can sometimes, but will not always, be correlated with one another. *See* Ex. 1, ¶ 27. Put another way, it is not reasonably clear whether the claimed method requires "masking alarms" that are correlated with ***any*** of the alarms in the list, or only with ***every*** alarm in the list. Thus, a person of ordinary skill in the art would not understand the meaning of "each alarm" in claim 1 of the '260 Patent with reasonable certainty, and the term is therefore indefinite and invalid.

Dated: June 18, 2021                    Respectfully submitted,

*/s/ Jason W. Cook*
Jason W. Cook
Texas Bar No. 24028537
Shaun W. Hassett
Texas Bar No. 24074372
**McGuireWoods LLP**
2000 McKinney Avenue, Suite 1400
Dallas, TX 75201
Telephone: (214) 932-6400
jcook@mcguirewoods.com
shassett@mcguirewoods.com

Tyler T. VanHoutan
Texas Bar No. 24033290
**McGuireWoods LLP**
600 Travis St., Suite 7500
Houston, TX 77002
Telephone: (713) 571-9191
tvanhoutan@mcguirewoods.com

Kuan-Chieh Tu
Texas Bar No. 24090443
**McGuireWoods LLP**
Two Embarcadero Center
Suite 1300
San Francisco, CA 94111
Telephone: (415) 490-0918
gtu@mcguirewoods.com

J. Mark Mann
Texas Bar No. 12926150
G. Blake Thompson
Texas Bar No. 24042033
**MANN | TINDEL | THOMPSON**
300 West Main Street
Henderson, Texas 75652
Telephone: (903) 657-8540
mark@themannfirm.com
blake@themannfirm.com

*Counsel for Defendants Huawei Technologies*
*Co., Ltd., and Huawei Technologies USA, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.

_/s/ Jason W. Cook_____
Jason W. Cook