# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT, <br><br> Plaintiff, <br><br> v. <br><br> HUAWEI TECHNOLOGIES CO. LTD., *et al.*, <br><br> Defendants. | CIVIL ACTION No. 6:20-CV-00889-ADA <br> CIVIL ACTION No. 6:20-CV-00891-ADA <br> CIVIL ACTION No. 6:20-CV-00892-ADA |

# **DEFENDANTS' SUR-REPLY CLAIM CONSTRUCTION BRIEF**

## TABLE OF CONTENTS

|   |   | Page |
|---|---|---:|
| I. | INTRODUCTION | 1 |
| II. | U.S. PATENT NO. 6,704,304 ("THE '304 PATENT") (CASE NO. 6:20-CV-00889) | 1 |
| | A. "means for determining whether a call should be routed over said PSTN or said core packet network" (claim 3) | 1 |
| III. | U.S. PATENT NO. 7,406,260 ("THE '260 PATENT") (CASE NO. 6:20-CV-00891) | 3 |
| | A. "masking alarms in the OCh paths in [transmit / receive] direction" (claim 1) | 3 |
| | B. "wherein the step of analyzing alarms comprises the steps of" (claim 1) | 5 |
| | C. "masking alarms in the downstream OCh path in the transmit direction that are correlated with each alarm in the list" (claim 1) | 8 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Default Proof Credit Card Sys. v. Home Depot U.S.A., Inc.*,
   412 F.3d 1291 (Fed. Cir. 2005) ............................................................................................ 2

*Innovative Display Techs. LLC v. Hyundai Motor Co.*,
   Case No. 2:14-CV-201, 2015 WL 2090651 (E.D. Tex. May 4, 2015) ..................................... 4

*Light Transformation Techs. LLC v. Lighting Science Group Corp.*,
   Case No. 2:12-CV-826, 2014 WL 3402125 (E.D. Tex. July 11, 2014) ................................... 4

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) ............................................................................................ 7

**Statutes**

35 U.S.C. § 112, ¶ 6 ................................................................................................................... 1

**Other Authorities**

MPEP § 2181(II)(B) ................................................................................................................... 2

I.   Introduction

In its Reply Brief,[1] Plaintiff ("WSOU") fails to rebut the majority of the arguments set forth in Defendants Huawei Technologies USA Inc.'s, *et al.*, (collectively, "Huawei's") Responsive Brief supporting Huawei's proposed claim constructions and grounds for indefiniteness,[2] and does not even mention, much less rebut, the expert testimony presented in support of Huawei's indefiniteness arguments. Rather, WSOU advances new claim construction positions and indefiniteness rebuttals that each miss the mark.

II.   U.S. Patent No. 6,704,304 ("the '304 Patent") (Case No. 6:20-CV-00889)

A.   "means for determining whether a call should be routed over said PSTN or said core packet network" (claim 3)

| Huawei's Proposed Construction | WSOU's Proposed Construction[3] |
|---|---|
| Subject to 35 U.S.C. § 112, ¶ 6.<br><br>**Function:** "determining whether a call should be routed over said PSTN or said core packet network"<br><br>**Structure:** server system (13), as depicted in Figure 1, programmed to perform the algorithm disclosed at 1:55-62, 4:1-10, 4:19-25, and Figure 2 (blocks 203 and 205), and equivalents thereof. | Subject to 35 U.S.C. § 112, ¶ 6.<br><br>**Function:** "determining whether a call should be routed over said PSTN or said core packet network"<br><br>**Structure:** ~~the portion(s) of server system (13)~~ ~~programmed~~ programming to perform ~~respective operation(s) of~~ the algorithm[[(s)]] disclosed at 1:55-62, 4:1-10, 4:19-25, and Figure 2 (blocks 203 and 205), and equivalents thereof. |

WSOU's Reply Brief begins by arguing that "Huawei misunderstands" the argument WSOU attempts to present. *See* Reply Brief at 1. But it is WSOU that misunderstands the issues

---

[1]   *See, e.g.*, Case No. 6:20-CV-00889, Dkt. 44 (the "Reply Brief").

[2]   *See, e.g.*, Case No. 6:20-CV-00889, Dkt. 43 (the "Responsive Brief").

[3]   In its Reply Brief, WSOU expressly withdraws its previous construction and presents a new proposed "structure" for this means-plus-function term (as reflected in the redlined recitation of the "structure" above). *See* Reply Brief at 2 ("Accordingly, as shown in the table above, WSOU withdraws its [prior construction] and, instead, identifies the corresponding structure as…").

in dispute and the relevant legal framework.[4] At base, WSOU's new proposed "structure" for this means-plus-function term is incorrect and legally improper, and WSOU's arguments in reply simply ignore Huawei's clear explanation of its proposed construction (and the inapplicability of the sole case relied upon by WSOU).

WSOU's identification of "programming to perform [an algorithm]" as the corresponding structure for this means-plus-function claim limitation is legally improper and technically inaccurate. It is well-settled that the corresponding structure "must include **all structure** that actually performs the recited function." *Default Proof Credit Card Sys. v. Home Depot U.S.A., Inc.*, 412 F.3d 1291, 1298 (Fed. Cir. 2005) (emphasis added). There can be no legitimate dispute that "programming to perform [an algorithm]" (*i.e.*, computer code) cannot perform the claimed function alone. Rather, the computer code must be executed by an actual, structural component (*e.g.*, a computer). *See, e.g.*, MPEP § 2181(II)(B) ("…if there is no corresponding structure disclosed in the specification (i.e., the limitation is only supported by software and does not correspond to an algorithm and the computer or microprocessor programmed with the algorithm), the limitation should be deemed indefinite…"). Here, that structural component is server system (13), as depicted in Figure 1 of the '304 Patent. Thus, the corresponding structure must include the portion of server system (13) that is programmed to perform the algorithm identified above. *See id.*

WSOU's arguments regarding the alleged redundancy of the "server system (13)" are a result of WSOU simply ignoring the unequivocal statements in Huawei's Responsive Brief and the plain language of claim 3. Indeed, WSOU repeats its argument from its Opening Brief that it

---

[4] This fact is highlighted by WSOU's shifting sands approach to claim construction generally, and that same approach with regard to this means-plus-function claim term specifically.

would be "redundant and illogical" to "structurally require the 'server system' to further comprise itself." *See* Reply Brief at 1-2. But Huawei has not advocated such a position. In fact, Huawei made clear in its Responsive Brief that it "does not propose 'server system (13)' alone as the corresponding structure." Responsive Brief at 5. Rather, the proper corresponding structure is that ***portion*** of server system (13) that is programmed to perform the algorithm identified above. This understanding is consistent with the plain language of claim 3, which makes clear that the "server system comprises [the relevant means]."

As Huawei's proposed construction properly identifies the structure that is clearly linked in the specification to the claimed function, Huawei's proposed construction is correct, and should be adopted by the Court.

## III. U.S. Patent No. 7,406,260 ("the '260 Patent") (Case No. 6:20-CV-00891)

### A. "masking alarms in the OCh paths in [transmit / receive] direction" (claim 1)

| Huawei's Proposed Construction | WSOU's Proposed Construction |
|---|---|
| Indefinite | Plain and ordinary meaning |

Huawei's Responsive Brief establishes that a person of ordinary skill in the art would not understand with reasonable certainty the meaning of "transmit direction" or "receive direction" in Claim 1 of the '260 Patent. Each of WSOU's attempts to rebut Huawei's showing fails, for the reasons set forth below.

*First*, WSOU's Reply Brief never even mentions, much less responds to, the expert declaration of Dr. Lavian. WSOU instead offers unsubstantiated (and incorrect) attorney argument. WSOU's inability to directly respond to the clear and convincing evidence of indefiniteness is incurable.

*Second*, in an attempt to demonstrate that the "transmit" and "receive" directions would be understood even without a point of reference, WSOU argues that "light…is directional." *See* Reply Brief at 4. Yet this over-simplification misses the mark. As explained in Huawei's Responsive Brief, for any given OCh path, while the transmission of light is "directional," it is not **unidirectional** (hence the recitation in the claims of both a "transmit" and "receive" direction). And there is simply nothing in Claim 1, or in the specification or prosecution history of the '260 Patent, that would allow a person of ordinary skill in the art to understand which is the "transmit direction" and which is the "receive direction."[5] *See Light Transformation Techs. LLC v. Lighting Science Group Corp.*, Case No. 2:12-CV-826, 2014 WL 3402125, at *9 (E.D. Tex. July 11, 2014) (finding the term "the axis of light direction" indefinite because the patent fails to identify the specific axis or direction that constitutes "the axis of light direction"); *Innovative Display Techs. LLC v. Hyundai Motor Co.*, Case No. 2:14-CV-201, 2015 WL 2090651, at * 23 (E.D. Tex. May 4, 2015) (finding the term "more in the width direction" indefinite where the claim contained no point of reference for such determination).

*Third*, contrary to WSOU's suggestion, the express language of Claim 1 contemplates analyzing **multiple** OCh paths (plural) in an optical network, meaning that the network to which the claimed method applies is one with multiple end points and multiple OCh paths between those end points. As explained in Huawei's Responsive Brief, this means that each port contemplated in the optical network of Claim 1 can transmit or receive light in and from multiple directions. Thus, even if a person of ordinary skill in the art could understand the "transmit" or "receive" direction with respect to a particular port in the OCh path (which he or she cannot), there is nothing

---

[5] This distinction is critical, as the "direction" dictates which "downstream alarms" are determined to be "correlated," and thus which alarms are masked and which are displayed to the system administrator. *See* Responsive Brief, Ex. 1, ¶¶ 47-50.

in Claim 1, nor in the specification or prosecution history of the '260 Patent, that would allow a person of ordinary skill in the art to determine *which* "transmit" or "receive" direction is claimed.

*Finally*, WSOU argues that "regardless of which end of the path that particular 'first port on the path' may be, that first port for that particular path will either be receiving along the particular path or transmitting along the particular path." *See* Reply Brief at 4. This argument is simply wrong. As explained in Huawei's Responsive Brief, and contrary to WSOU's suggestion that OCh paths are unidirectional, even a single OCh path can be multi-directional. *See* '260 Patent at 6:36-38 ("An OCh path is associated with a path in the transmit direction *and* a separate path in the receive direction.") (emphasis added). Moreover, any given port can have multiple transmit and receive directions. *See* Responsive Brief at 7-10.

Because a person of ordinary skill in the art would not understand the "transmit direction" and "receive direction" terms of Claim 1 with reasonable certainty, these terms are indefinite, and Claim 1 is therefore invalid.

**B.** **"wherein the step of analyzing alarms comprises the steps of" (claim 1)**

| Huawei's Proposed Construction | WSOU's Proposed Construction |
|---|---|
| Indefinite | Plain and ordinary meaning |

WSOU does not appear to challenge the fact that this claim term lacks antecedent basis (nor can it). Instead, WSOU continues to commit the "cardinal sin" of reading limitations from the specification into the claims and urges the Court to ignore this fault. Indeed, in explaining why "analyzing alarms" allegedly refers back to "masking alarms," WSOU never cites the actual claim language, instead repeatedly citing passages from the specification. *See* Reply Brief at 5-6.

To overcome the fact that the arguments in its Opening Brief would render dependent Claims 3 and 4 superfluous (and create further ambiguity in Claim 1), WSOU now backtracks,

arguing that "analyzing alarms" only refers to one of the two prior recitations of "masking alarms" in Claim 1. Specifically, WSOU (now) argues that "analyzing alarms" only refers back to "masking alarms in the OCh paths in transmit direction." *See* Reply Brief at 6.

Curiously absent from WSOU's Reply Brief, however, is any explanation as to why "analyzing alarms" in Claim 1 allegedly refers to the previously recited "masking…in [the] transmit direction," but not to the previously recited "masking…in [the] receive direction." In fact, in both its Opening Brief and Reply Brief, WSOU cites passages from the specification that it argues shows that "analyzing alarms" refers to ***both*** masking in the transmit direction and masking in the receive direction. *See* Opening Brief at 4-5; Reply Brief at 5.

Further demonstrating the flaw in its new argument, WSOU's contention that the step of "analyzing alarms" in Claim 3 further limits the step of "masking alarms…in [the] receive direction" from Claim 1, would actually render Claim 4 redundant. Specifically, Claim 4—as advocated by WSOU—would accordingly read (in relevant part): "***masking alarms*** in the OCh paths ***in receive direction***…wherein the step of analyzing alarms comprises… "***masking alarms*** in the downstream OCh path ***in the receive direction***…." WSOU's ever-changing arguments only serve to show that WSOU is straining to justify a claim limitation that unquestionably lacks antecedent basis.

WSOU further argues that its repeated (and exclusive) reliance upon the specification "merely demonstrate how a person of skill in the art would understand the claim language." Reply Brief at 6. This argument likewise fails. Indeed, there can be no legitimate dispute that "analyzing alarms" is a broad term that could encompass various different analyses, including, for example, assigning hierarchical "levels" to the alarms. *See, e.g.*, Claim 1 ("determining if each alarm in the list is an OCh alarm or a port level alarm or a card level alarm"); *see also* '260 Patent at 2:41-47

("The step of analyzing alarms … comprises the steps of … determining if each alarm in the list is an OCh alarm or a port level alarm or a card level alarm"); 2:53-59 ("The step of analyzing alarms comprises the steps of … determining if each alarm in the list is an OCh alarm or a port level alarm or a card level alarm"). Thus, despite its claims to the contrary, WSOU is in fact attempting to read limitations from the specification into the claims to limit the meaning of the claimed "analyzing alarms" in direct violation of bedrock claim construction principles. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1319-1320 (Fed. Cir. 2005) ("[O]ne of the cardinal sins of patent law [is] reading a limitation from the written description into the claims.").

Moreover, WSOU's Reply Brief fails to respond in any way to the fact that reading Claim 1, as advocated by WSOU, would create redundancy and self-contradiction within Claim 1 itself.[6] As explained in Huawei's Responsive Brief, the first "masking" step, "***masking alarms*** in the OCh paths ***in transmit direction***" would render the last "masking" step, "***masking alarms*** in the downstream OCh path ***in the transmit direction*** that are correlated with each alarm in the list," redundant. Similarly, the second "masking" step, "masking alarms in the OCh paths in ***receive direction***," is inconsistent with and contradictory to the first "masking" step of "masking alarms in the downstream OCh path in the ***transmit direction*** ...."

Because "the step of analyzing alarms" unquestionably lacks antecedent basis, and because WSOU's attempted justification violates core tenants of claim construction, this claim limitation is indefinite, and Claim 1 is therefore invalid.

---

[6] This argument is true both for WSOU's original argument and its modified argument on this claim term.

C. **"masking alarms in the downstream OCh path in the transmit direction that are correlated with each alarm in the list" (claim 1)**

| Huawei's Proposed Construction | WSOU's Proposed Construction |
|---|---|
| Indefinite | Plain and ordinary meaning |

For the same reasons discussed above (and in Huawei's Responsive Brief) with respect to the "transmit direction" term, this claim limitation is indefinite because there is nothing in Claim 1 or in the specification or prosecution history of the '260 Patent that specifies a point of reference for determining the "transmit direction," as compared to the "receive direction," or any other direction. *See supra* Section III.A; *see also* Responsive Brief at 6-10, 13-14.

With respect to the "downstream OCh path," WSOU again commits the "cardinal sin" of reading limitations from the specification into the claim. WSOU argues that "the specification teaches starting with the 'first port on the path,'" and that the downstream OCh path therefore "refers to ports on the path including the next port on the path and after." Reply Brief at 9. But there is nothing in Claim 1 that mentions, much less requires, masking alarms with reference to the "first port on the path." The only way Claim 1 would be so limited is if limitations from the specification were (impermissibly) read into the claim.

Setting aside WSOU's attempt to violate fundamental claim construction principles, WSOU's argument further fails to address the fact that a person of ordinary skill in the art would not understand the term "downstream OCh path" with reasonable certainty (*e.g.*, *which* "downstream OCh path"). Indeed, WSOU merely argues that this step "is directed to only the single OCh path that is being analyzed." *See* Reply Brief at 9. However, as explained in Huawei's Responsive Brief, any given OCh path can have multiple branches, and there is nothing in Claim 1 or in the specification or prosecution history of the '260 Patent that offers guidance as to what constitutes the "downstream OCh path."

Finally, WSOU's Reply Brief demonstrates that even WSOU cannot ascertain the meaning of "masking alarms…that are correlated with each alarm in the list." As explained in Huawei's Responsive Brief, a person of ordinary skill in the art would not understand whether Claim 1 of the '260 Patent requires masking an alarm when it is correlated with ***any*** other alarm in the list, or only masking the alarm when it is correlated with ***every*** alarm in the list. *See* Responsive Brief at 13-14. Unable to resolve this ambiguity, WSOU instead tiptoes around the issue, arguing that "the claim language specifies masking alarms for every correlated alarm in the list." Reply Brief at 9. But this does not resolve the ambiguity. If anything, WSOU's argument creates further ambiguity, suggesting that alarms in the list could be correlated with one another (a feature that is neither claimed nor described in the specification of the '260 Patent). WSOU thus fails to address the issue at hand, and instead injects further uncertainty about which alarms should be masked.

Because a person of ordinary skill in the art would not understand the meaning of this claim limitation with reasonable certainty, Claim 1 of the '260 Patent is indefinite and therefore invalid.

Dated: July 16, 2021						Respectfully submitted,

*/s/ Jason W. Cook*
Jason W. Cook
Texas Bar No. 24028537
Shaun W. Hassett
Texas Bar No. 24074372
**McGuireWoods LLP**
2000 McKinney Avenue, Suite 1400
Dallas, TX 75201
Telephone: (214) 932-6400
jcook@mcguirewoods.com
shassett@mcguirewoods.com

Tyler T. VanHoutan
Texas Bar No. 24033290
**McGuireWoods LLP**
600 Travis St., Suite 7500
Houston, TX 77002
Telephone: (713) 571-9191
tvanhoutan@mcguirewoods.com

Kuan-Chieh Tu
Texas Bar No. 24090443
**McGuireWoods LLP**
Two Embarcadero Center
Suite 1300
San Francisco, CA 94111
Telephone: (415) 490-0918
gtu@mcguirewoods.com

J. Mark Mann
Texas Bar No. 12926150
G. Blake Thompson
Texas Bar No. 24042033
**MANN | TINDEL | THOMPSON**
300 West Main Street
Henderson, Texas 75652
Telephone: (903) 657-8540
mark@themannfirm.com
blake@themannfirm.com

*Counsel for Defendants Huawei Technologies Co., Ltd., and Huawei Technologies USA, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.

 /s/ Jason W. Cook  
Jason W. Cook
